IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PATRICIA A. PARKER, | § |
| Plaintiff, | § |
| V. | § CIVIL ACTION NO. H-12-3068 |
| CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § |
| Defendant. | § |

## MEMORANDUM AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 11), and Defendant's cross Motion for Summary Judgment (Document No. 12). After considering the cross motions for summary judgment, the parties' additional briefing, the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and the decision of the Commissioner is AFFIRMED.

---

[1] On May 2, 2013, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 9.

**I.      Introduction**

Plaintiff Patricia A. Parker ("Parker") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income benefits ("SSI"). Parker argues in one point of error that the ALJ "failed to consider all of the evidence." The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, and that the decision comports with applicable law.

**II.     Administrative Proceedings**

On or about February 25, 2010, Parker applied for SSI, claiming that she has been unable to work since June 30, 2008, as a result of depression and a left shoulder torn rotator cuff. (Tr. 100-103; 136). The Social Security Administration denied the application at the initial and reconsideration stages. After that, Parker requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, Justilian Martin, held a hearing on August 5, 2011, at which Parker's claims were considered *de novo*. (Tr. 9-28). On August 26, 2011, the ALJ issued his decision finding Parker not disabled. (Tr. 34-41).

Parker sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On

May 2, 2012, the Appeals Council found no basis for review (Tr. 1-3), and the ALJ's decision thus became final.

Parker filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). The parties have filed cross motions for summary judgment (Document Nos. 11 & 12). The appeal is now ripe for ruling.

### III.     Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C.§ 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th

Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.   Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

4

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

    The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Parker had not engaged in substantial gainful activity since February 24, 2010, her amended alleged onset date. At step two, the ALJ found that Parker's left rotator cuff tear, morbid obesity, diabetes mellitus and hypertension were all severe impairments. At step three, the ALJ concluded that Parker did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ then, prior to consideration of steps four and five, determined that Parker had the residual functional capacity ("RFC") to perform a limited range of sedentary work, including the ability to "lift/carry 10 pounds occasionally and less than 5 pounds frequently; stand/walk 2 hours in an 8 hour workday with normal breaks; sit 6 hours in an 8 hour workday with normal breaks; never climb ladders, ropes, scaffolds; no work at unprotected heights; and no overhead reaching with the left arm [but] could reach at waist level." (Tr. 37). At step four, using that RFC and relying on the testimony of a vocational expert, the ALJ determined that Parker could perform her past relevant work as a security officer/supervisor as that work was actually and generally performed, and that she was, therefore, not disabled.

In this appeal, Parker's only argument is that the ALJ failed to consider all the evidence, including the medical opinion of Dr. Frank Barnes, and her inability to afford treatment.[2] According to Parker, this failure constitutes reversible error.

### V. Discussion

In a Medical Record Review dated July 21, 2011, Dr. Frank Barnes, from his review of Parker's MRI results of July 8, 2011, wrote:

> Ms. Parker has a condition in her left shoulder which will cause a great deal of pain

---

[2] Parker makes no argument as to the ALJ's assessment of her alleged depression.

> and weakness of her left upper extremity. It also limits the effective motion of the shoulder.
>
> It requires a surgical operation for relief of the problem. The usual recovery time of this surgery is between 6 and 12 months. The recovery time is longer in older patients such as Ms. Parker.

(Tr. 269-270). The ALJ did not mention or discuss this opinion of Dr. Barnes in his written decision. In that respect Parker is correct. Parker is incorrect, however, that the ALJ's failure to mention or discuss Dr. Barnes' opinion means that he didn't consider it, or that he committed reversible error.

The medical evidence in the record is quite sparse (Tr. 217-272). There is no dispute in the objective medical evidence or in the expert medical opinion evidence that Parker has a left rotator cuff tear. There is also no real dispute in the record that Parker's left rotator cuff tear causes Parker pain. The medical expert who testified at the hearing, Dorothy Leong, admitted as much (Tr. 21-25). The only real dispute presented by the evidence in the record was whether the pain from Parker's left rotator cuff tear was disabling. The ALJ concluded, as follows, that it was not:

> The claimant has complaints of left shoulder pain. X-ray of the left shoulder shows no fracture, dislocation or bony spurs. There is minimal narrowing of joint space (Ex. 2F2). Claimant was advised to have an MRI but stated that she had claustrophobia and would not go for [a] regular MRI. She was advised to have an open MRI done but never went for that (Ex. 9F). Subsequently, the claimant finally went for an open MRI, performed in July 2011, which showed a complete tear of the supraspinata tendon (Ex. 7F1). The claimant had been taking Ibuprofen at [the] time and stated it g[ave] her relief, however she has not been taking [it] on a regular basis (Ex. 2F1). The claimant has deferred treatment based on financial considerations. The claimant has received AC injection with relief (Ex. 4F3, 10F1, 11F2).
>
> The claimant has not sought or received treatment on a regular basis alleging she cannot afford treatment (Ex. 10F1). However, the claimant has a smoking habit that is inconsistent with the claimant's allegations that she cannot afford treatment. In addition, the claimant testified she is not currently on any pain medication, despite the complaints of disabling pain. Even if the claimant could not afford private care, treatment is available through the indigent programs. If the claimant's condition was not severe enough to motivate her to seek treatment, it is difficult to accept her

>assertion that her impairments are disabling.

>The claimant appears to be able to perform her activities of daily living adequately. The claimant lives alone. She has not reported needing any particular assistance. She indicated she is able to make her own meals. She takes care of and walks her dog. She watches television and reads during the day. She is able to drive her jeep and goes out alone unassisted. She goes grocery shopping twice a month. She is able to take care of her personal needs such as dressing and bathing. She does laundry, dusts and washes dishes. She walks, 20 minutes, for exercise. She visits with people and talks to friends on the phone (Ex. 7E). Overall, the claimant's activities of daily living provide support for the residual functional capacity as found herein.

>Although the claimant has complaints of severe pain, it is the conclusion of the Administrative Law Judge that the pain experienced by the claimant is limiting, but when compared with the total evidence, not severe enough to preclude all types of work. The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The issue is not the existence of pain, but rather the degree of incapacity incurred because of it. While the claimant complains of severe pain, it does not seem reasonable to conclude from the findings in evidence that such could be the basis for the degree of pain alleged. The claimant does not appear to be experiencing progressive physical deterioration which might be expected when there is intense and continuous pain.

>This is not to say the claimant is pain-free; however, the evidence did not support a finding that [her] pain is disabling. It did not appear that the claimant's pain is of such frequency, intensity, or duration as to be disabling. The evidence of record failed to demonstrate the presence of pathological clinical signs, significant medical findings, or neurological abnormalities which would establish the existence of a pattern of pain of such severity that would contraindicate claimant in engaging in all substantial gainful activity.

>As for the opinion evidence, the undersigned concurs with the state agency medical consultants' determination that the claimant's condition is not severe enough to keep her from working. Despite her multiple impairments, the evidence did not show that her ability to perform basic work activities was as limited as she had indicated. Moreover, the undersigned notes that none of the claimant's treating physicians have stated that she cannot work.

>In sum, the above residual functional capacity assessment is supported by the objective medical evidence and the credible testimony of Dr. Leong.

(Tr. 39-40). The ALJ's conclusion is supported by the record as a whole. The objective medial

evidence shows that Parker has a left torn rotator cuff, accompanied by tenderness and pain on palpation of the acromioclavicular joint, pain over the shoulder joint on abduction, and an inability to raise her arm more than 80-90% of abduction. (Tr. 217-218, 221-223, 227). She takes only over-the-counter medication for pain, and does not even do so regularly. The testifying medical expert, Dr. Leong, opined from her review of Parker's medical records that Parker could, even with her left torn rotator cuff, engage in a limited range of sedentary work activities. (Tr. 21-23). Parker's subjective complaints of pain and limited range of motion were found to be not fully credible and inconsistent with her reported daily activities. (Tr. 40, 172-178). Finally, her past work as a security officer/supervisor, as reported by Parker, did not require any overhead lifting or reaching and was therefore within her ability to perform a limited range of sedentary work. (Tr. 27, 167).

      Given that the record fully supports the ALJ's determination that Parker is able to engage in a limited range of sedentary work that does not require overhead lifting or reaching, including her past work as a security officer/supervisor, there was no need for the ALJ to discuss each and every piece of evidence in the record. *Bordelon v. Shalala*, 31 F.3d 661, 1994 WL 684574 *1 (5th Cir. 1994) ("the ALJ need not discuss every piece of evidence in the record"); *Castillo v. Barnhart*, 151 F.App'x 334, 2005 WL 2675002 *1 (5th Cir. 2005) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence."); *Hulen v. Colvin*, No. EP-12-CV-178-RFC, 2013 WL 4788816 (W.D. Tex. Sept. 6, 2013) ("It is not necessary for an ALJ to summarize and discuss every piece of record evidence in his decision."); *see also Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in his articulation compromises no aspect of fairness or accuracy that this process is designed to ensure."). With respect to the opinion of Dr. Barnes, the record shows that

9

Dr. Barnes' opinion was fully explored with the testifying medical expert at the administrative hearing:

> Q: Yeah, Doctor, in regard to Exhibit 10F, we have the review by Dr. Barnes. You read that report, right?
>
> A: Yes.
>
> Q: Okay. Now he mentions one of the three things of significance that are in this, the later MRI, Item 2, severe impingement upon the subacromial space and rotator cuff was seen. He concludes from that review, in quote, great deal of pain. I'm assuming you're feeling you're feeling like you're disagreeing with Barnes because your testimony is implying that she could work eight hours a day with the restriction that you said. Is that correct?
>
> A: I don't know how he would determine that she would have a great amount of pain unless, you know, she's reported that to him. But was this paper review on his part?
>
> Q: Paper review.
>
> A: I'm sorry. W[as] it paper review?
>
> Q: Paper review, right. Paper review, yeah, exactly. He did not evaluate her directly, no.
>
> A: Right.
>
> Q: So my question is, when you read severe impingement, you're very comfortable reading that and you having not examined her either being sure that she can work eight hours a day five days a week?
>
> A: Back up a little bit. Where are you reading severe impingement?
>
> Q: That's –
>
> A: Where are you reading that?
>
> Q: That's the second, the MRI result, the one on 7/18.
>
> A: Let me just pull that out real quick. Yeah, she does have some evidence of severe subacromial – I'm sorry, severe impingement of subacromial space. That basically would indicate that, you know, you would have limitations in overhead activity, you know. Basically you don't move your shoulder above, you know, above

      waist level you would probably have problems there.

      Q:      So you're saying the severe impairment is not going to have no – any pain consequence unless you're in that reaching posture?

      A:      That is correct.

      Q:      What is your, what is your speciality?

      A:      It's physical medicine and rehabilitation. Again, overhead activities would be what would be causing the impingement.

\       Q:      Okay.

      A:      Because you're rubbing the bone against the tendon overhead.

      Q:      So you're saying just moving around in a clerical position where you're working at a desk reaching down, you pick something off the floor, go onto a shelf and getting something basically waist height, you're absolutely sure that that pain is never going to reach the point where she is not, she is not going to be able to work eight hours a day 40 hours a week? You're sure of that?

      A:      Cannot say it with absolute certainty, you know, but based on medical probability.

(Tr. 23-25).

In addition, with respect to the ALJ's alleged failure to inquire about and consider the reasons Parker did not seek treatment, the record shows that Parker was, notwithstanding her failure to seek treatment, not disabled by her torn rotator cuff. Where there is no evidence of a disabling condition, a claimant's inability to afford treatment is irrelevant. *Fellows v. Apfel*, 211 F.3d 125, 2000 WL 309976 *3 (5th Cir. 2000); *see also Sustaita v. Astrue*, No. EP-11-CV-00178-RFC, 2012 WL 3581163 *4 (5th Cir. Aug. 17, 2012) ("Where there is no evidence that a condition would be disabling without regular treatment, however, the ALJ may properly consider the lack of treatment otherwise unavailable due to indigence as evidence of non-disability."). As such, in this case, where

there was no evidence in the record that Parker was disabled as a result of any of her impairments, including her left torn rotator cuff, her failure to seek treatment and the reasons for that failure, including her inability to afford treatment, was irrelevant. As such, the ALJ did not err in failing to inquire about her financial ability to seek treatment.

In all, because there is nothing in the record that supports the conclusion that Parker cannot perform her past work as a security officer/supervisor, the ALJ did not err in failing to mention the opinion of Dr. Barnes or inquire about the reasons Parker did not seek regular medical treatment. Additionally and alternatively, even if the ALJ erred in failing to mention and discuss Dr. Barnes' opinion, and erred in failing to develop the record as to Parker's difficulties in obtaining medical treatment, such error was harmless. An error is harmless if it does not "affect the substantial rights of a party," *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), or when it "is inconceivable that the ALJ would have reached a different conclusion" absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *Bornette v. Barnhart*, 466 F.Supp.2d 811, 816 (E.D. Tex. 2006) ("Harmless error exits when it is inconceivable that a different administrative conclusion would have been reached absent the error."). Here, the record shows that Parker, by her own admission as to the daily activities she did perform (Tr. 172-178), could also perform her past work as a security officer/supervisor, as she described it:

> the job is described as supervisor for Mrs. Baird's Bakery. Checks all visitors in and out, answer the phone . . . Doing and writing complete reports, perform duties like this, yes, walking, zero, standing two, sitting six, climbing zero, stooping zero, kneeling zero, crouching zero, crawling zero, handling and grasping big objects, reaching zero, write type or hand – small objects, telephone is written in.

(Tr. 26-27; 167). The ALJ's decision is therefore supported by substantial evidence in the record and is not the product of the ALJ's failure to consider all the evidence.

**VI.     Conclusion and Order**

Based on the forgoing, and the conclusion that the ALJ did not err, and that if he did err such error was harmless, it is

ORDERS that Defendant's Motion for Summary Judgment (Document No. 12) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 11) is DENIED, and the Commissioner's decision is AFFIRMED.

Signed at Houston, Texas, this 5th day of March, 2014.

_____
Frances H. Stacy
United States Magistrate Judge